[Cite as *State v. Halka*, 2021-Ohio-149.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                           Court of Appeals No. WD-19-061

    Appellee                                       Trial Court No. 2018CR00568

v.

Cody Michael Halka                              **DECISION AND JUDGMENT**

    Appellant                                      Decided:  January 22, 2021

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Karin L. Coble, for appellant.

* * * * *

**OSOWIK, J.**

## I.  Introduction

{¶ 1} This matter is on appeal from the judgment of the Wood County Court of

Common Pleas, which after a jury trial on a 22-count indictment for drug-related

activities, sentenced appellant, Cody Halka, to an aggregate prison term of 33 years.

Finding error as to the conviction on the corrupt practices charge, we reverse, in part, but

affirm as to all other charges.

## II. Background and Procedural History

{¶ 2} In February of 2018, Detective Adam Skaff of the Bowling Green Police Department[1] approached L.V., a 25-year-old Bowling Green State University student, and gave him a choice. L.V. could either face prosecution for his own activities in trafficking in cocaine, or he could lead police to a bigger fish. Police had gathered evidence against L.V. by conducting three controlled buys from him between September and October of 2017, using a confidential informant. L.V. agreed to help police, and identified appellant as someone who had sold him drugs, or the bigger fish.

{¶ 3} Detective Skaff set up a series of controlled buys from appellant, using L.V. as a confidential informant and coordinating with officers and agents from other police agencies. Each time appellant used Snapchat to arrange the sale with L.V. while L.V. was in Wood County, Ohio. Following standard protocol for a controlled buy, Skaff and other officers provided L.V. with currency, ensured L.V. had no drugs either on his person or in his vehicle, and monitored the transaction through visual and electronic surveillance.

{¶ 4} L.V. traveled to appellant in Lucas County to complete each transaction. Over several months, L.V. made increasingly larger purchases from appellant while following controlled-buy protocols. On March 30, 2018, L.V. purchased $300 worth of cocaine. On July 26, 2018, he spent $1,700. On August 10, L.V. increased his purchase

---

[1] By the time of trial, Detective Skaff had been promoted to Sergeant Skaff.

to $3,300, and on August 24 he spent $5,000. After the August 24 transaction, federal Drug Enforcement Administration (DEA) agents executed a search warrant for appellant's home. Appellant identified one of his suppliers, but not his cocaine source. They did not arrest appellant, hoping to protect L.V.'s identity as a confidential informant, and hoping to eventually discover appellant's cocaine supplier.

{¶ 5} On October 24, 2018, L.V. arranged to buy $4,800 worth of cocaine from appellant, again arranging the sale through Snapchat while L.V. was in Wood County. Police obtained an anticipatory search warrant, to be executed once they received confirmation that appellant was ready for the sale, and DEA agents executed the search warrant at appellant's home in Lucas County. Local law enforcement provided tactical assistance. Upon their arrival and entry, agents observed appellant tossing bags of cocaine from a second-story window of the home, with one bag opening upon impact with a car, another snagging on the roof and a third impacting the sidewalk leading to the front porch, landing at the feet of an agent. As the bags landed, they spewed their contents, and agents recovered as much of the powder as they could with a broom and dustpan. Agents also recovered additional cocaine, still inside the home and on the upstairs window sill, and seized the cocaine and other evidence indicative of drug sales. After completing their search, the agents placed appellant under arrest.

{¶ 6} Appellee, the state of Ohio, charged appellant in a 22-count indictment for violations including possession and trafficking offenses, tampering with evidence, possession of criminal tools, and engaging in a pattern of corrupt activity.

3.

{¶ 7} As to possession offenses, appellant was charged in Count 1 with possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(b), a felony of the fourth degree. He was charged in Counts 4 and 7 of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(e), felonies of the first degree. He was charged in Count 10 and 16 of possession of cocaine with a major drug offender specification in violation of R.C. 2925.11(A) and (C)(4)(f), felonies of the first degree.

{¶ 8} As to trafficking offenses, appellant was charged in Counts 2 and 3 with trafficking in cocaine in violation of R.C. 2925.03(A)(1) and (C)(4)(c) in Count 2 and R.C. 2925.03(A)(2) and (C)(4)(c) in Count 3, both felonies of the fourth degree. He was charged in Counts 4, 6, 8, and 9 with trafficking in cocaine in violation of R.C. 2925.03(A)(1) and (C)(4)(f) in Counts 4 and 8, and R.C. 2925.03(A)(2) and (C)(4)(f) in Counts 6 and 9, all felonies of the first degree. He was charged in Counts 13 and 14 with trafficking in drugs in violation of R.C. 2925.03(A)(1) and (C)(2)(a), felonies of the fifth degree. He was charged in Counts 12 and 18 with trafficking in cocaine with a major drug offender specification in violation of R.C. 2925.03(A)(2) and (C)(4)(g), a felony in the first degree. He was charged in Counts 11 and 17 with aggravated trafficking in cocaine with a major drug offender specification, in violation of R.C. 2925.03(A)(1) and (C)(4)(g), a felony of the first degree.

{¶ 9} Appellant's other charged offenses included Counts 15 and 21, possession of criminal tools in violation of R.C. 2923.24 (A) and (C), a felony of the fifth degree, Counts 19 and 20, tampering with evidence in violation of R.C. 2921.12(A)(1) and (B), a

4.

felony of the third degree, and Count 22, engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) and (B)(1), a felony of the first degree.[2]

{¶ 10} Prior to trial, appellant filed a motion in limine, seeking to preclude evidence of "unknown and/or as-yet unidentified people" that the prosecution indicated within the bill of particulars combined with appellant to comprise the enterprise for purposes of the corrupt activities charge. The prosecution indicated, based on the dictates of "common sense," that "someone grew the coca plants; someone produced cocaine from those coca plants; someone packaged that cocaine; someone transported that cocaine into this country; and someone sold that cocaine to the Defendant before he sold it to a confidential informant who was working with law enforcement in this case."

{¶ 11} In support of the motion in limine, appellant argued that the state failed to timely identify an expert witness to testify regarding cocaine production, growth, and trafficking, requiring exclusion at trial pursuant to Crim.R. 16(K). Appellant further argued that the state "disclosed no expert or report to support the inference of association with others unknown and unidentified who produce or distribute cocaine." Appellant argued that, without "the production of predicate facts by way of admissible evidence," the prosecutor should be precluded from arguing any "common sense" inference at trial. The trial court denied the motion.

---

[2] The state later moved to dismiss forfeiture specifications attached to Counts 2, 3, 5, 6, 8, 9, 11, 12, 13, 14, 15, 17, 18, and 21, which the trial court granted.

{¶ 12} The matter proceeded to a jury trial, with testimony by the officers and agents, testimony by L.V., and numerous photographs and recordings taken during surveillance or as part of execution of the search warrants. The state also introduced testimony and exhibits identifying various quantities of cocaine and other drugs seized, as well as a shotgun and other items commonly used in the drug trade. Over appellant's objection, the state also introduced testimony regarding Mexican and South American drug cartels.

{¶ 13} DEA Special Agent Kurtis Jestes testified regarding his experience investigating drug trafficking, in Texas near the Mexican border, and in Lima, Peru. Jestes testified generally regarding the flow of drugs from Laredo, Texas, to various large cities within the United States, beginning with Dallas, the primary intermediary location, and then to Chicago, the northern distribution point, before moving on to various cities. He testified that the DEA looked for cocaine quantities over 50 to 100 kilograms.

{¶ 14} Jestes then testified regarding his experience as a DEA agent in Lima, Peru, which he identified as a source country for cocaine. Appellant's trial counsel objected to generalized testimony regarding the movement of cocaine from Peru to Toledo, Ohio, and the trial court summarily overruled the objection. Jestes then testified regarding his general knowledge of the various cartels operating within the United States. As to appellant's conduct, Jestes testified regarding the surveillance in Toledo, indicating he observed drug activity at appellant's residence and sales by appellant to L.V. Although Jestes testified in generalities regarding the movement of cocaine into the United States

6.

and Toledo, Ohio, he did not testify regarding the source of the cocaine seized from appellant's home.

{¶ 15} DEA Special Agent Jeremy Nissen also testified regarding drug cartels. He indicated he spent part of his career with the DEA posted in Columbia, "to work the cartels" and investigate money laundering organizations part of or related to the cartels. Nissen testified that his job involved following the money "from the factories where they produced and made the cocaine, all of the way into the United States." Once again, appellant's trial counsel objected, referring back to argument in the motion in limine. In response, the prosecutor characterized Nissen as a fact witness, not offered for his expert opinion. The trial court once more overruled the objection.

{¶ 16} Nissen's testimony regarding the typical journey of cocaine to cities in the United States largely mirrored Jestes' testimony. He testified that cartels produced cocaine in Central America and shipped it to the United States through Mexico, crossing the border in Texas. From Texas, it was distributed to the major cities, and from those distribution centers, it continued on to the smaller cities, such as Toledo. Nissen then testified regarding the money side of the business, indicating once the drug was distributed to the destinations, the money would make the return trip through the transportation structure.

So there would be a collection guy, for example, in Toledo that would be in charge of all of the money. He would then – normally here they put it to a truck driver – the truck drivers then hide it within legitimate

7.

loads going back down to the southern border, at which time they would figure out whether it's via tunnel, via other legitimate loads, or guys just in – we call it suicide cars – where they are loaded with a million, two million dollars, going across the border in order to get it back to the cartels.

{¶ 17} Nissen's testimony regarding his knowledge and experience, however, was generalized. Regarding Nissen's experience in appellant's case, he testified regarding the limits of that participation. Nissen supervised the investigation and initially only viewed and approved his team's reports. He became involved in surveillance beginning August 24, and was present for the execution of the search warrants on August 24 and October 24. Nissen identified appellant as the subject of the team's surveillance on both dates. He also witnessed appellant tossing bags of cocaine from the upstairs window on October 24, and indicated one of the bags landed at his feet.

{¶ 18} When asked about the quantity of cocaine, Nissen could not answer with certainty, stating "it depends on what organization we're working with." Nissen provided no testimony regarding which "organization" was involved, and provided no testimony connecting the money found in the search to an "organization" or cartel. Based on Nissen's testimony, he and another agent questioned appellant and learned the source of about 1,000 Xanax pills, seized from the home on October 24, was a local dealer. There was no testimony regarding a supplier of the cocaine, or the source of the cocaine.

{¶ 19} DEA Special Agent Brenden Gillen provided testimony relative to the items seized from appellant's home during the two searches. For the August 24 search,

8.

Gillen was tasked with inventorying the non-drug items seized. He testified regarding various items recovered as items typically used in drug houses, including a loaded shotgun, propped next to the back door, and the reinforcing bar added across the back door. He also testified regarding a bag of gloves and a container of creatine, used in processing and packing drugs for sale. Gillen next displayed the shotgun, itself, and described its operation and capabilities, indicating a round from the shotgun "will obliterate a concrete block" and "will kill you." Finally, Gillen displayed several cell phones seized from the home.

{¶ 20} As to the October 24 search, Gillen indicated he recognized appellant as the individual throwing cocaine out of the window of a second-floor bedroom as officers arrived. He testified that cash was strewn about the inside of that bedroom, mostly tens and twenties, and there was also a box of plastic bags commonly used to package drugs for sale. Additionally, he noted a digital scale in the room, cocaine residue on the window ledge, and cocaine in various spots outside the house, including the roof below the window, a car, and the front walk. Gillen was shown envelopes containing cocaine, and testified regarding the collection of the powder and submission for forensic testing.

{¶ 21} Sara Tipton, a forensic scientist with the Ohio Bureau of Criminal Investigation testified regarding her analysis of the powder submitted for testing after each controlled buy and after seizure, pursuant to the two search warrants. Tipton identified the powder in each instance as "containing cocaine." There was no testimony regarding the specific origin of each sample of cocaine.

9.

{¶ 22} At the close of the prosecution's case, appellant's trial counsel moved for acquittal as to all charges for lack of evidence establishing proper venue in Wood County. As to the charge of engaging in a pattern of corrupt activity, trial counsel argued insufficient evidence of "the element of association with an identified enterprise to allow the jury to consider" that count. The trial court denied the motion based on lack of venue, and denied the motion as to the corrupt activity charge, noting the other individuals involved in the sales, and without any specific reference to drug cartels. The defense rested without presenting any witnesses.

{¶ 23} In his closing argument, the prosecutor identified all the drug-related charges as the corrupt activity, satisfying that element of the charge of engaging in a pattern of corrupt activity. The prosecutor then argued that there had been testimony that, "whether [appellant] would like to acknowledge it or not, he was part of an international operation that had one mission. To sell dope and make money." The prosecutor then referenced the Sinaloa drug cartel, and argued:

Now, that's not to say that he is as guilty as the leader of the Sinaloa drug cartel – but, what's the motto of the Three Musketeers? 'All for one and one for all.' Because without the cartel connection, he would not have had cocaine to sell. The coca leaves are grown in South America, they're produced there. You heard from Kurt Jestes, who was one of the jungle group operators, whose job it was to go through Peru, find those hidden factories and destroy them. That's the connection that [appellant] has with

10.

South America. Now is he responsible for everything that the cartel does? Absolutely not. But, we're not here to hold him accountable for what the cartel did, but only what he has done.

{¶ 24} Appellant's trial counsel raised no objection to the prosecutor's bold claim of a "cartel connection," but instead, highlighted the prosecutor's heavy reliance on baseless assumption in lieu of actual evidence of a connection between appellant and a cartel. The trial court provided the standard instruction to the jury regarding the elements necessary to convict on the corrupt practices charge.

{¶ 25} The jury returned a guilty verdict as to Counts 1-14 and 16-22, with additional findings as to the major drug offender specification for Counts 11 and 18. The jury found appellant not guilty of Count 15, one of two possession of criminal tools charges. On July 31, 2019, the trial court held a sentencing hearing.

{¶ 26} The trial court determined that many of the counts were subject to merger as follows: Counts 1, 2, and 3 merged; Counts 4, 5, and 6 merged; Counts 7, 8, and 9 merged; Counts 10, 11, and 12 merged; Counts 13 and 14 merged; Counts 16, 17, and 18 merged; and Counts 19 and 20 merged. After merger, the state elected to proceed to sentencing on Counts 2, 5, 8, 11, 13, 18, and 20, along with Counts 21 and 22.

{¶ 27} The trial court imposed a prison term of 17 months as to Count 2, 10 years as to Count 5, 10 years as to Count 8, 11 years, mandatory, as to Count 11, 11 months as to Count 13, 11 years, mandatory, as to Count 18, 30 months as to Count 20, and 11 months as to Count 21. As to Count 22, engaging in a pattern of corrupt activity, the trial

11.

court imposed a mandatory prison term of 11 years. The trial court then ordered the prison term in Counts 11, 18, and 22 to be served consecutively, for an aggregate prison term of 33 years.

{¶ 28} This appeal followed.

### III. Assignments of Error

{¶ 29} In challenging the trial court's judgment, appellant asserts the following as error:

Assignment of Error One: The Wood County trial court erred in denying Mr. Halka's motion to dismiss all counts for lack of venue, as all elements of the alleged offenses occurred in Lucas County, thereby violating Ohio Constitution Art. I, § 10.

1. None of the elements occurred in Wood County.

2. The location of a State agent alone cannot create venue.

3. The State actor in a "unilateral" conspiracy cannot create venue.

Assignment of Error Two: Because no evidence shows the existence of an "enterprise" or a "pattern," the conviction for engaging in a pattern of corrupt activity is unsupported by sufficient evidence and is against the manifest weight of the evidence.

1. Unidentified Sought American "drug cartels" cannot constitute an enterprise.

2. Wendell and Mr. Halka are not an "enterprise" with a "pattern" of corrupt activity.

3. An individual cannot, alone, commit a RICO violation.

4. The State failed to prove that Vetter and Mr. Halka constituted an "enterprise."

Assignment of Error Three: The trial court erred to Mr. Halka's prejudice when it overruled Mr. Halka's motion in limine to exclude testimony regarding unidentified South American "drug cartels."

Assignment of Error Four: The trial court erred to Mr. Halka's prejudice when it permitted the prosecution to show the jury prejudicial evidence which was irrelevant to the charges.

Assignment of Error Five: The maximum and consecutive sentence of 33 years is clearly and convincingly unsupported by the record.

## IV. Analysis

{¶ 30} Appellant raises two issues, as part of his assignments of error, that are potentially dispositive to the case or a charge. First, appellant challenges venue, arguing the trial court erred in denying his motion to dismiss all charges for lack of proper venue. Second, appellant challenges the sufficiency of the evidence in support of his conviction for engaging in a pattern of corrupt activity. His remaining assignments of error address evidentiary rulings and imposition of sentence. We address each issue in turn.

13.

## 1. Venue

{¶ 31} In his first assignment of error, appellant argues that venue was improper in Wood County, and the trial court erred in denying his motion to dismiss. "The standard to establish venue is whether 'appellant has significant nexus' with the county of venue." *State v. Hackworth*, 80 Ohio App.3d 362, 366, 609 N.E.2d 228 (6th Dist.1992), citing *State v. Draggo*, 65 Ohio St.2d 88, 92, 418 N.E.2d 1343 (1981).

{¶ 32} Venue refers to a criminal defendant's right to be tried in the county in which the offense occurred. Section 10, Article I, Ohio Constitution; R.C. 2901.12. "Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant." (Citation omitted.) *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). The state must prove venue beyond a reasonable doubt, with no need for proof by "express terms so long as it is established by all the facts and circumstances in the case." *Id.,* citing *State v. Dickerson*, 77 Ohio St.34, 82 N.E. 969 (1907), paragraph one of the syllabus; *see also State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20.

{¶ 33} Pursuant to R.C. 2901.12(H), venue is proper in any jurisdiction in which an offender commits an offense or any element of an offense occurred, where, "as part of a course of criminal conduct, [an offender] commits offenses in different jurisdictions[.]" *See Draggo*, 65 Ohio St.2d at 90, 418 N.E.2d 1343. Therefore, the prosecution had no need to prove that each and every offense and all elements of each offense occurred in

14.

Wood County if the offenses were part of a course of conduct having a connection to Wood County. *See id.*

{¶ 34} Appellant argues that no element of any offense occurred in Wood County, because the actual drug sales occurred in Lucas County. The state presented evidence, however, that included L.V.'s testimony and screen captures of Snapchat messages, demonstrating appellant arranged and negotiated the drug sales with L.V. while L.V. was in Wood County. Furthermore, communication is sufficient to establish venue, even if L.V. initiated the communications, with appellant's argued authority in support of the contrary position, distinguishable.

{¶ 35} In *State v. Bovee*, 6th Dist. Huron No. H-02-032, 2003-Ohio-2788, cited by appellant, we reversed a conviction for complicity in drug trafficking, based on improper venue. *Id.* at ¶ 1. While *Bovee* also involved a drug sale arranged in one county and completed in another, the drug dealer, Sheila Bovee, had no communication with anyone in the county in which she was tried. *Id.* at ¶ 28. Instead, a third party agreed to facilitate the drug sale for the buyer while in Huron County, and drove the buyer to the Bovee's home in Richland County, with no facts to demonstrate any communication with Bovee prior to showing up at her doorstep. *Id.*

{¶ 36} In the present case, the evidence demonstrated communication between appellant and L.V. while L.V. was in Wood County. Appellant communicated with L.V. on numerous occasions, with L.V.'s location in Bowling Green explicitly referenced on at least one occasion within the Snapchat text. L.V. also testified that he was in Wood

15.

County when he communicated with appellant via Snapchat. Furthermore, regardless of who initiated contact, the evidence demonstrated that appellant agreed to sell quantities of cocaine to L.V. who attended school and resided in Wood County, and the two completed the sale at appellant's home in Lucas County. We have previously found venue based on similar facts.

{¶ 37} In *State v. Warden*, 6th Dist. Wood No. WD-03-065, 2004-Ohio-6306, we found venue proper in Wood County where the defendant was in the business of selling drugs and arranged to sell marijuana to a police informant at a gas station in Wood County. *Warden* at ¶ 37. When appellant arrived at the gas station, he told the informant to follow him back to his house in Sandusky County, "because he had seen a strange car" at the gas station. *Id.* While the physical exchange of money for drugs occurred in Sandusky County, we determined appellant implicitly offered to sell the drugs to the informant in Wood County, and venue in Wood County was therefore proper. *Id.*

{¶ 38} Similarly, in *State v. Hackworth*, 80 Ohio App.3d 362, 609 N.E.2d 228 (6th Dist.1992), we found venue proper in Erie County, where the money and drugs were physically exchanged, but also in Sandusky County, where the parties reached agreement on the quantity and price. *Hackworth* at 366-367. We determined that the defendant had a "significant nexus" with Sandusky County, because there was "little doubt that the transaction which formed the basis of the charge was planned and agreed to in full detail in Sandusky County." *Id.*

16.

{¶ 39} The Twelfth District Court of Appeals relied on our authority in *Hackworth* in finding a nexus to the place of prosecution where a drug dealer used the phone to negotiate the terms of the drug sale with a buyer located in the venue. In *State v. Meridy*, 12th Dist. Clermont No. CA2004-11-091, 2005-Ohio-241, *overruled on other grounds by State v. Foster*, 109 Ohio S.3d 1, 2006-Ohio-856, 845 N.E.2d 470, venue was deemed proper in either the county where the physical sale occurred or in the county where the buyer was located at the time the details of the transaction were negotiated by phone. As in this case, the dealer in *Meridy* knew where the buyer was located at the time of negotiation, and understood the drugs would be taken back to that county after the physical exchange of money for drugs. *Meridy* at ¶ 23.

{¶ 40} Based on the evidence adduced at trial, we find the prosecution established proper venue in Wood County, and the trial court did not err in denying appellant's motion to dismiss for lack of proper venue. Appellant's first assignment of error, therefore, is not well-taken.

### 2. Corrupt Activity and Drug Cartels

{¶ 41} In his second and third assignments of error, appellant argues that evidence of "drug cartels" was improperly admitted as irrelevant to the corrupt activity charge, and there was insufficient evidence to support a conviction on this charge. Additionally, appellant argues his conviction for engaging in a pattern of corrupt activity was against the manifest weight of the evidence.

17.

**{¶ 42}** The admission of relevant evidence is within the discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. Accordingly, our review is limited to whether the trial court abused that discretion. *State v. Langlois*, 2013-Ohio-5177, 2 N.E.3d 936, ¶ 15 (6th Dist.). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.

**{¶ 43}** The "drug cartel" testimony was the subject of a motion in limine prior to trial. The trial court's denial of that motion was a preliminary, anticipatory ruling on the evidentiary issue, but appellant attempted to preserve the issue by repeatedly objecting during trial. *See State v. Hunter*, 169 Ohio App.3d 65, 2006-Ohio-5113, 861 N.E.2d 898, ¶ 28 (6th Dist.), citing *State v. Grubb*, 28 Ohio St.3d 199, 201, 503 N.E.2d 142; *State v. Mauer*, 15 Ohio St.3d 239, 259, 473 N.E.2d 768 (1984); *State v. Brown*, 38 Ohio St.3d 305, 528 N.E.2d 523 (1988), paragraph three of the syllabus.

**{¶ 44}** On appeal, appellant argues that evidence regarding "drug cartels" had no probative value in his case, and the trial court erred in permitting such testimony, later stressed by the prosecution in his closing argument, as proof of an enterprise. This challenge differs from the objection asserted in the trial court, where appellant argued

18.

such evidence required expert testimony, and appellant sought to preclude all such testimony based on the state's failure to comply with Crim.R. 16(K).[3]

{¶ 45} Here, the testimony regarding cartels was limited to the agents' foundational testimony related to personal knowledge and experience. The agents testified regarding their respective backgrounds, working as a DEA agent in Peru or Columbia to locate cocaine, or investigating financial information to identify members in drug organizations based on the flow of funds. Neither agent provided testimony to link drug cartels to appellant or this case. Significantly, no witness testified that the cocaine seized in this case originated in Peru or South American and was purchased by appellant from a cartel. Furthermore, no witness linked appellant to a broader money-laundering organization as part of any cartel. Instead, there was generalized testimony regarding the workings of cartels and trafficking routes and specific testimony of the arrest of appellant after witnessing four drug sales to L.V., with a great void separating the two types of testimony.

{¶ 46} Because appellant never challenged the relevancy of "drug cartel" testimony in the trial court, he waived all but plain error in that regard. To correct an error that was not raised at trial, we must find "a deviation from a legal rule," the error "must be plain" or an obvious "defect in the trial proceedings," and the error "must have

---

[3] Appellant raises no challenge based on his trial counsel's strategy, choosing to confront the prosecutor's closing argument within his own closing remarks, rather than object at the time the prosecutor argued a connection between appellant and drug cartels, based on no evidence.

affected 'substantial rights.'" (Citations omitted.) *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, 103 N.E.3d 783, ¶ 36.

{¶ 47} As to relevancy, the state clearly hoped to prove that appellant was part of a cartel or drug trafficking organization in order to convict appellant of the corrupt practices charge. In response to appellant's request for a bill of particulars, the state essentially indicated that "drug cartels" were part of the state's case-in-chief, because it was "common sense" that appellant was "associated in fact" with a cartel if he sold cocaine which might be produced, packaged, transported, and sold in the United States by cartels. Evidence of cartel involvement, therefore, was potentially relevant to demonstrate a relationship between appellant and a cartel. *See, e.g., United States v. Castro-Aguirre*, 983 F.3d. 927 (7th Cir.2020), citing *United States v. Suggs*, 374 F.3d 508, 517 (7th Cir.2004) (where evidence establishes a link between defendant and cartel, such evidence is admissible "for the limited purpose of showing the existence of the conspiracy and the connection among the various actors").

{¶ 48} Despite the state's apparent aspirations, the prosecution presented no testimony or evidence to close the loop between drug cartels, known to produce, package, distribute, and sell cocaine within the United States, and appellant's conduct in this case. Lacking evidence, the prosecutor relied on an implicit connection in closing argument to the jury, claiming appellant was part of the entire, international drug trafficking world in a ramble that jumped from a Mexican cartel and Peruvian cocaine to appellant as a member of some unidentified "cartel" with South American connections. The

20.

prosecutor's conclusion regarding the evidence was illogical, resting on the premise that, because Special Agent Jestes was one of the agents in the Peruvian jungle searching out cocaine, "[t]hat's the connection that [appellant] has with South America."

{¶ 49} Appellant notes this failure to demonstrate any connection in arguing irrelevance. Because the state failed to present any evidence demonstrating a relationship between appellant and a cartel, the foundational testimony regarding the structure and operation of drug cartels does appear irrelevant in retrospect. Consequently, the issue becomes more an error in submission to the jury, rather than error in the admission of evidence. We therefore address appellant's second assignment of error, as dispositive of the relevancy argument.

{¶ 50} In his second assignment of error, appellant limits his challenge to sufficiency and weight of the evidence relative to the corrupt activities charge. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Sufficiency pertains to the adequacy of the evidence as to each element of an offense in supporting a conviction. *Id.* Without sufficient evidence as to each element, the case may not go to the jury, and acquittal is proper as a matter of law. *Id.* The weight of the evidence, in contrast, "concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.) *Id.* at 387. In considering the weight of the evidence, an appellate court sits as a "thirteenth juror," and may only reverse if, in considering the

evidence and weighing all reasonable inferences, it is clear the jury lost its way in resolving conflicts in the evidence. *Id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶ 51} Appellant argues that the state failed to introduce sufficient evidence to demonstrate association with an enterprise, a required element to convict on the charge of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1). That statute provides: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity[.]"

{¶ 52} An "enterprise" is broadly defined to include "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C).

{¶ 53} A "pattern of corrupt activity" requires proof of "two or more incidents of corrupt activity * * * that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E).

{¶ 54} "Person" is separately defined as "any person * * * and any governmental officer, employee, or entity." R.C. 2923.31(G).

{¶ 55} At trial, appellant's counsel moved for acquittal pursuant to Crim.R. 29, arguing "the State has failed to produce sufficient evidence of the element of association

22.

with an identified enterprise to allow the jury to consider the engaging count in Count 22." The state opposed, arguing the broad and inclusive definition of "enterprise," which could be comprised of appellant and the cartel, or appellant and his Xanax dealer, or appellant and the individuals seen coming and going from his property during the "surveillance activities." The state presented no argument as to *association* with an enterprise. The trial court denied the motion, noting the evidence of the third party who sold appellant Xanax, "and others," as sufficient evidence of an enterprise to merit consideration by the jury.

{¶ 56} In closing argument, the prosecutor narrowed his focus to the cartel theory of enterprise, and maintained, without reference to any evidence, that appellant "was part of an international operation that has one mission: To sell dope and make money." On appeal, the state now argues that appellant—alone—could comprise an enterprise, or in the alternative, that appellant—acting with unknown or even innocent individuals—could comprise the enterprise. However, appellant continues to argue the lack of any *association* with an enterprise, which the state does not address.

{¶ 57} Addressing the sole actor theory, we find no basis to consider appellant, himself, as both the enterprise and the person associated with the enterprise. While the definition of "enterprise" is broad, and stated in terms of who might comprise the enterprise, the corrupt practices offense also requires a person, associated with the enterprise, to conduct or participate in the affairs of the enterprise. *See* R.C. 2923.32(A)(1). Where, as here, there is only a de facto, "association in fact," we must

consider whether the "enterprise" consists of a unit functioning with a common purpose. *See State v. Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, ¶ 9.

{¶ 58} The state cites to various authority in support of the proposition that appellant, alone, could comprise the enterprise, but this authority is easily distinguished. Furthermore, we find no authority supporting the theory that appellant can be both the person associated with the enterprise and the enterprise itself.

{¶ 59} We previously found a one-person enterprise where that person used their legitimate business as a "front" for drug trafficking activities. *See State v. Reimsnyder*, 6th Dist. Erie No. E-93-71, 1994 WL 735517, *12 (Dec. 30, 1994). We also held that a sole proprietor, with at least one other employee, was a "group of individuals associated in fact," constituting an enterprise. *State v. Post*, 6th Dist. Lucas No. L-95-153, 1996 WL 532320, *6 (Sept. 20, 1996), citing *Reimsnyder, supra.* We also determined that one person, committing a single act, could engage in a pattern of corrupt activity if their act combined with separate, related acts by others in the same enterprise. *State v. Barnes*, 6th Dist. Wood No. WD-07-024, 2008-Ohio-1854, ¶ 22-24.

{¶ 60} While we agree that an individual might comprise an "enterprise," the law also requires a person, employed by or associated with that enterprise, acting as a unit with common purpose. *Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, at ¶ 9. The corrupt practices statute, moreover, was intended to "reduce the influence and power of organized crime," and not to punish a lone drug dealer, acting as an individual, since punishment of the individual "would have no discernible effect on the fight against

24.

organized crime." *State v. Stevens*, 139 Ohio St.3d 247, 2014-Ohio-1932, 11 N.E.3d 252, ¶ 15-16.[4] The state's argument of the solo operator as both an enterprise and the person associated with the enterprise, accordingly, is without merit.

{¶ 61} We next consider whether there was an enterprise based on an association-in-fact, consisting of appellant and his customers, or appellant and his Xanax supplier, or appellant and an unnamed, amorphous "drug cartel." Again, the state focuses on the definition of "enterprise" and fails to address the "association" requirement.

{¶ 62} As previously addressed, the state presented no evidence to connect the loop between the generalized activities of drug cartels and the specific conduct of appellant. We do not foreclose the possibility that a local dealer could be associated with and participate in the activities of a drug cartel, but the facts in this case do not support that conclusion. The state elicited no testimony or opinion regarding appellant's relationship with any cartel operations.[5] Likewise, the state presented no testimony regarding appellant's relationship with the Xanax dealer or any of his customers.

---

[4] In *Stevens*, the Ohio Supreme Court considered whether the statute's use of "person," to refer to one who engages in a pattern of corrupt activity relative to the individual, minimum threshold of each drug sale to satisfy R.C. 2923.31(I)(2)(c), requiring the proceeds from the sale of drugs to exceed $1,000 to qualify as a corrupt activity. The Supreme Court rejected application to individual dealers, selling smaller sums, "merely because the drugs could be traced back to a multibillion-dollar Colombian drug cartel." *Stevens*, 139 Ohio St.3d 247, 2014-Ohio-1932, 11 N.E.3d 252, at ¶ 15-16.

[5] Because such expert testimony was never admitted, appellant does not ask us to decide whether such expert testimony would be admissible. Accordingly, we do not address that issue in our decision.

25.

Specifically, there was no evidence presented at trial to demonstrate an association-in-fact, based on a common purpose to traffic in cocaine, shared by appellant and any other person or organization.

{¶ 63} The Ohio Supreme Court has addressed the requirements for an enterprise based on an association-in-fact, noting the requirement of "both a relationship and continuous activity[.]" *Beverly*, 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, at ¶ 2, citing *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603. Thus, "the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure." *Beverly* at ¶ 11, quoting *Boyle v. United States*, 556 U.S. 938, 947, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009).

{¶ 64} The evidence, in this case, demonstrated no individual or group, having any relationship with appellant in appellant's drug "business." As noted by other jurisdictions, a drug trafficker may be convicted of corrupt practices violations based on association or cooperation in the selling of drugs. *See State v. Fritz*, 178 Ohio App.3d 65, 2008-Ohio-4389, 896 N.E.2d 778, ¶ 51 (2d Dist.) (enterprise existed because "at least two persons * * * associated together for the common purpose of engaging in a course of criminal conduct by trafficking in drugs"); *State v. Montoya*, 12th Dist. Clermont No. CA2012-02-015, 2013-Ohio-3312, ¶ 55 (two individuals involved in the selling, and referenced "their bosses" in negotiating a sale); *State v. Pippins*, 10th Dist. Franklin Nos. 15AP-137, 15AP-138, 15AP-140, 2020-Ohio-503 (facts established at trial demonstrated an organized drug network with Pippins as a leader or participant).

26.

**{¶ 65}** In *State v. Baker*, 12th Dist. Warren No. 2013-Ohio-2398, the Twelfth District Court of Appeals considered whether various suppliers, dealers, and customers could comprise an association-in-fact enterprise. The issue in that case was venue, and specifically, the existence of an enterprise comprised of Baker, operating in Butler and Hamilton Counties, and other dealers and customers doing business in Warren County. *Baker* at ¶ 38. Baker operated a large marijuana grow operation, and sold to another, smaller grow operation run by Stacy and Cody Lampe, a husband and wife team. *Id.* at ¶ 35. The Lampes purchased Baker's marijuana in either Butler or Hamilton Counties. *Id.* The Lampes also sold marijuana to various customers, including Lopez, who purchased some of Lampes' marijuana as part of a controlled buy for police in Warren County. *Id.* at ¶ 37. Police reached the Lampes by following the chain from the lower level dealers to Lopez, and the Lampes agreed to work with police in investigating Baker. The state eventually charged Baker in Warren County based on the theory that Baker was part of an association-in-fact enterprise with the other individuals in the chain of suppliers, dealers, and buyers of marijuana in Warren County. *Baker* at ¶ 3.

**{¶ 66}** At a trial to the bench, despite gathering overwhelming evidence of Baker's drug enterprise in Butler and Hamilton Counties, the state failed to demonstrate any association between Baker and individuals conducting marijuana sales in Warren County. *Baker* at ¶ 21. Instead, the trial court found that none of the individual participants had a relationship to the others, sufficient to form an association. *Id.* Instead, each of the individuals were operating their own "separate and distinct 'business' venture when

27.

selling marijuana [and] each individual participated in his own affairs." *Id.* at ¶ 22. Lacking any evidence tying Baker's conduct to any offense in Warren County, and without demonstration of a relationship among the individuals, Baker was acquitted for failure to prove venue, with the acquittal affirmed on appeal. *Id.* at ¶ 38.

{¶ 67} The facts in the present case are similar, as the state failed to present evidence demonstrating an association-in-fact among appellant and any other individual or group. Appellant's purchase of Xanax pills and his sales to L.V. were for his own benefit, and not part of a cooperative enterprise. While the evidence indicated L.V. had been in the business of selling cocaine in Wood County, there was no testimony that he was selling on behalf of appellant, as part of an operation, or that his sales benefited L.V.'s and appellant's common "business."

{¶ 68} The state presented no evidence of any mutual benefit, or common purpose among any combination of individuals, necessary to establish the enterprise. *See, e.g., State v. Groce*, Slip Opinion No. 2020-Ohio-6671, ¶ 8 (all three dealers "understood the purpose of their joint activities to manufacture and sell cocaine out of the house"). Instead, the evidence adduced at trial demonstrated a series of drug sales, by appellant to L.V. or by the Xanax dealer to appellant, with no evidence of a larger operation. The evidence, moreover, demonstrated no connection between appellant and an unnamed cartel or any other drug organization.

{¶ 69} Based on this record, and viewing the evidence most favorably for the state, we find insufficient evidence to support the conviction for engaging in a pattern of

28.

corrupt activity. The trial court, therefore, erred in denying the motion for acquittal, and the conviction must be vacated. Thus, we need not consider either the challenge based on the manifest weight of the evidence or the error in admitting testimony regarding "drug cartels." Appellant's second assignment of error is found well-taken, and his third assignment of error is deemed moot.

### 3. Shotgun as Evidence

{¶ 70} Appellant's fourth assignment of error challenges the display of the shotgun to the jury during trial. Appellant argues that permitting the jury to view a shotgun, seized as a result of the search of his home, was improper and unduly prejudicial, as the shotgun was not offered as evidence of any charged offense. In support, appellant references authority determining the admission of firearms is "somewhat prejudicial." *See State v. McKinney*, 11th Dist. Lake No. 2000-L-210, 2002-Ohio-4360, ¶ 30. In *McKinney*, however, the defendant was convicted of felonious assault and trafficking with firearm specifications, and the firearm was deemed admissible, probative evidence, not outweighed by the danger of unfair prejudice. *Id.* at ¶ 24; *see also State v. Bowers*, 11th Dist. Trumbull No. 2016-T-0049, 2017-Ohio-2726, ¶ 18 ("evidence regarding firearms has some prejudicial effect in a criminal case, but it may also have probative value when the offender is charged with drug offenses.").

{¶ 71} The firearm evidence is reviewed for an abuse of discretion. *Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Here, appellant does not truly dispute his connection to the shotgun, recovered from his own home. Evidence of the

29.

shotgun, moreover, was introduced along with testimony indicating guns were common tools of drug dealers. Thus, in this case, the evidence was not irrelevant to the drug charges, and not unfairly prejudicial. *See, e.g., State v. Graves*, 6th Dist. Lucas No. L-02-0153, 2003-Ohio-2359, ¶ 56 (admission of evidence of guns not irrelevant or unduly prejudicial when accompanied by testimony that guns are "tools of the trade"); *State v. Bundy*, 5th Dist. Richland No. 05CA50, 2006-Ohio-4062, ¶ 25 ("when the crime charged is drug related, evidence of firearms is both relevant and probative").

{¶ 72} Finding no error in the admission of the shotgun, we find appellant's fourth assignment of error not well-taken.

### 4. Sentencing

{¶ 73} In his fifth and final assignment of error, appellant challenges the maximum, consecutive sentence imposed in Counts 11, 18, and 22. As to these three counts, the trial court imposed a mandatory 11-year prison term in each, and ordered each term to be served consecutively, for a total of 33 years. The trial court then ordered all remaining prison terms to be served concurrently with each other and concurrently to the aggregate 33-year prison sentence for Counts 11, 18, and 22. Based on our determination regarding Count 22, finding insufficient evidence to sustain a conviction for engaging in a pattern of corrupt activity, we consider the sentence only as to the remaining Counts 11 and 18.

{¶ 74} We review felony sentences pursuant to R.C. 2953.08(G)(2), and may increase, reduce, or otherwise modify a sentence if we clearly and convincing find that

30.

"the record does not support the sentencing court's findings" for consecutive sentences. *See State v. Gwynn*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 16; *State v. Jones*, Slip Opinion No. 2020-Ohio-6729, ¶ 27; R.C. 2953.08(G)(2)(a). Appellant argues that imposition of the 33-year aggregate, mandatory sentence is not clearly and convincingly supported by law, based on the necessary findings for consecutive sentences.

{¶ 75} Pursuant to R.C. 2929.14(C)(4), a trial court must make the following findings before imposing consecutive sentences:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the

31.

multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 76} Here, at the sentencing hearing and in the judgment entry, the trial court found:

[T]hat consecutive sentences are necessary to protect the public from future crime and to punish the offender, consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; that the offender was under a sanction imposed by another Court at the time of the offenses; at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct and the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from further crime by the offender.

**{¶ 77}** In arguing a sentence not clearly and convincingly supported by the record, appellant does not contend that the trial court failed to make any of the required findings under R.C. 2929.14(C)(4). Instead, appellant disagrees with the trial court's findings, and asks this court to conduct an in-depth review of the facts that the trial court might have considered in reaching its decision to impose consecutive sentences. Specifically, appellant argues there are no facts to support a finding that his conduct was part of a course of conduct, or that concurrent sentences would be disproportionate to the seriousness of his conduct and the danger posed to the public. We disagree.

**{¶ 78}** "When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing * * * [and] the court should also incorporate its statutory findings into the sentencing entry. However, a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29.

**{¶ 79}** Upon review of the record, we find support for the trial court's finding regarding a "course of conduct." Appellant was found guilty of trafficking in cocaine, based on four, separate controlled buys conducted over months. The fourth instance occurred from the same location after DEA agents executed a search of the property and seized drugs and other contraband. We further find support for the trial court's finding that concurrent sentences would be disproportionate to the conduct and the danger posed.

33.

Based on the evidence at trial, a jury determined that appellant was a major drug offender as to Counts 11 and 18, and the quantity of drugs sold increased and continued, even after appellant's home was searched.

{¶ 80} Despite appellant's disagreement with the trial court's findings, he points to no deficiency in the trial court's adherence to R.C. 2929.14(C)(4). Upon review of the record, we find clear and convincing support for the imposition of consecutive sentences. We therefore find appellant's fifth assignment of error not well-taken.

## V. Conclusion

{¶ 81} Having found substantial justice has not been done, we reverse the judgment of the Wood County Court of Common Pleas, in part, vacate the conviction as to Count 22, engaging in a pattern of corrupt activity, and affirm the sentence as to Counts 1-14 and 16-21, including the imposition of consecutive sentences as to Counts 11 and 18, for a mandatory, aggregate prison sentence of 22 years. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed, in part,
and affirmed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                    _____
                                                      JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, J.               _____
CONCUR.                                               JUDGE


                                     _____
                                                      JUDGE


| This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/. |
| --- |