DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the August 7, 2003 judgment of the Wood County Court of Common Pleas, which sentenced appellant, Rex Warden, following his conviction of two counts of trafficking in cocaine and one count of engaging in a pattern of corrupt activity. Upon consideration of the assignments of error, we affirm the decision of the lower court. Appellant asserts the following assignments of error on appeal:
 {¶ 2} "Assignment of error No. 1: The state failed to prove venue as to Count 1 of he indictment.
 {¶ 3} "Assignment of error No. 2: The state failed to prove venue as to Count 2 of the indictment.
 {¶ 4} "Assignment of error No. 3: The evidence was insufficient to demonstrate that Mr. Warden ever sold more than ten grams of cocaine as he was convicted of doing in the second count of the indictment.
 {¶ 5} "Assignment of error No. 4: The state failed to provide proper notice of the predicate acts alleged to have been committed in regard to Count 4.
 {¶ 6} "Assignment of error No. 5: The trial court violated Mr. Warden's constitutional right to trial and due process when it imposed a prison sentence for Count 1 after having previously imposed a sentence of community control on that count."
 {¶ 7} On June 6, 2002, appellant was indicted on four counts. The first three counts charged appellant with trafficking in cocaine on three different occasions, in violation of R.C.2925.03(A)(1), one of which was a felony of the fifth and two were felonies of the third degree. The fourth count charged appellant with engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1) and (B)(1), a felony of the first degree. Appellant's guilty plea to the first three counts was accepted by the trial court on September 19, 2002, and the prosecutor indicated that she would dismiss the fourth count at the time of sentencing. Appellant was sentenced on January 7, 2003 to three years of community control for Count 1; two years of imprisonment for Count 2 and two years of imprisonment for Count 3, with the prison sentences to run concurrently and the community control sanction to run consecutively with the prison sentences. If appellant violated the terms and conditions of community control, an 11-month sentence would be imposed.
 {¶ 8} On January 9, 2003, appellant moved to have his sentence set aside and to withdraw his guilty pleas. Appellant had believed that the third degree felonies might carry a prison term, but did not know at the time of the plea that a prison term was mandatory under R.C. 2925.03(A)(1) and (C)(4)(d). The trial court initially denied the motion on January 17, 2003. However, after a hearing on January 24, 2003, the court granted appellant's motion on February 3, 2003.
 {¶ 9} The prosecution moved to amend the indictment and correct the amounts of crack cocaine taken from appellant based upon the analysis reports. The prosecution also moved to dismiss Count 3 of the indictment in the interest of justice.
 {¶ 10} Following a trial to the bench, the court denied appellant's motion for acquittal and found appellant guilty of Counts 1, 2 and 4 on June 30, 2002. In an August 7, 2003, nunc pro tunc judgment entry, appellant was sentenced to consecutive terms of imprisonment of 11 months on Count 1, two years on Count 2, and three years on Count 4. Appellant was also ordered to pay a $10,000 fine with respect to Count 2 and costs of the prosecution. Appellant then filed a notice of appeal to this court.
 {¶ 11} The following evidence was presented in this case. Agents of the Drug Enforcement Agency and the Ohio Attorney General's Office Bureau of Criminal Investigation testified that the investigation began when a confidential informant notified them that he knew appellant was trafficking drugs in Wood County. At the time, the informant was on probation for a misdemeanor. He testified that he became a confidential informant after he had three felony counts of trafficking against him in another county. He began working with the police in exchange for a reduction in the charges against him.
 {¶ 12} The informant testified that he had met appellant through Tommy Stiger about two or three months prior to the first controlled drug buy. The informant was working as a confidential informant for another police department at the time he met appellant. Straub had met Stiger through Stiger's sister and did not have many dealings with him other than meeting appellant through Stiger.
 {¶ 13} The task force utilized the informant to make several controlled drug buys. The first buy occurred on February 26, 2002. The informant arranged to meet Stiger, who would introduce the informant to appellant. However, the informant and one of the agents met Stiger at a gas station located at the corner of Route 6 and U.S. 23 in Wood County, Ohio, while on their way to appellant's house. The informant told Stiger that his companion, the accompanying agent, was the person for whom the informant was buying the drugs. Stiger told the informant that the agent could not come along on the deal. The agent remained at the gas station while the informant and Stiger went to appellant's home in Sandusky County on County Road 67. The informant paid Stiger $50 to take him to appellant's house. Another task force agent followed Stiger and the informant to appellant's home and observed the informant's and appellant's vehicles in the driveway.
 {¶ 14} Appellant told the informant that he only had three pads of 16 ounces to sell for $100 each. However, appellant said he could get more in a couple of hours if the informant wanted to wait. Although the informant was told to buy more, he paid appellant for the three pads and left to meet the agents.
 {¶ 15} The second controlled buy began on March 7, 2002 with a telephone call by the informant from the task force's office in Bowling Green in Wood County to appellant at his residence in Sandusky County. The informant told appellant that he wanted to come to appellant's house in 45 minutes to buy some cocaine. The informant went directly to appellant's house. Appellant told the informant that appellant only had a quarter of an ounce for sale and that he could get some more for $400. The informant agreed to wait at the gas station while appellant got another quarter ounce. An agent testified that Ronald Skaggs lived about three-fourths of a mile from the gas station. Appellant drove on southbound U.S. 23, which is in Wood County, on his way to the gas station. When appellant arrived at the gas station, he told the informant that he had seen a strange car and did not want to do anything at the gas station. Therefore, the informant followed appellant on a longer route back to appellant's house. Appellant later told the informant that he wanted to make sure that no one was following them. At appellant's house, appellant and the informant completed the deal. The informant gave appellant another $400 and got another quarter ounce of cocaine.
 {¶ 16} The informant was searched before each controlled buy and provided with photocopied money for the purchase. After the buy, the informant was searched and the agents retrieved the cocaine, the remainder of the money, and digital recordings.
 {¶ 17} When one of the agents interviewed appellant, he said that he suspected that the blue car he had seen at the gas station was the police and that is why he did not want to complete the drug sale at the gas station. He admitted that he could get any amount of drugs, cigarettes, or alcohol and sell it all. Therefore, he made numerous offers to help the task force to avoid a prison sentence. Even while appellant was a fugitive, he tried to cut a deal. However, the task force did not trust him. During these conversations, appellant told the agent about the entire trafficking operation except that he did not know the top two individuals involved.
 {¶ 18} Another agent verified the custody of the drugs as they were shipped to the DEA's North Central Lab in Chicago for testing. A chemist with the DEA who examined the drugs retrieved from the sales testified that the first purchase was 3.5 grams of cocaine hydrochloride and that the second purchase was 11.3 grams of cocaine hydrochloride.
 {¶ 19} The other members of the drug trafficking group testified against appellant regarding other incidences where appellant sold them drugs. None of these incidences, however, were alleged in the indictment. All of these members were testifying in exchange for a guilty plea to reduced charges of drug trafficking. They had all been indicted at the same time as appellant. Andrew Yonikus, testified that he had known appellant for two to three through his drug purchases and from using drugs together. From February to May 2002, Yonikus purchased cocaine from appellant 10 to 12 times. He purchased one to two grams at a time. He either purchased them at appellant's house or at the gas station. Yonikus also knew Skaggs through his drug use and had been at Skaggs' house at the same time as appellant. He believed appellant bought drugs from Skaggs because they would go into another room as Yonikus had done when he bought drugs from Skaggs. Yonikus had also bought drugs for others from appellant.
 {¶ 20} Stiger testified that he had known appellant since they were kids and that he also associated with him because of the drug business. Stiger knew Joshua Strayer and Skaggs because they used drugs with Stiger and appellant. Stiger knew that appellant went to Skaggs' house because he followed appellant one time. Stiger also knew that appellant would buy drugs from Skaggs for Stiger.
 {¶ 21} From February to May 2002, Stiger stayed at appellant's house a lot of the time. Stiger purchased drugs from appellant during this time period, usually a gram or two at a time. He also used drugs without paying for them and did work for appellant. Stiger would go to the gas station at State Route 6 and U.S. 23 to drop off envelopes of drugs for the employees and others. Stiger also assisted appellant many times by holding drugs for him and selling to people Stiger knew.
 {¶ 22} Stiger recalled introducing a man, whom he knew as John, to appellant for purposes of purchasing drugs from appellant. Stiger recalled taking John to appellant's house in February 2002 when John was buying the drugs for someone else. Appellant did not want the other person to come over, so Stiger took John alone. John and appellant went into another room. Stiger recalled that appellant did not have enough drugs to sell John what he wanted to buy.
 {¶ 23} Skaggs testified that he had known appellant for about four years while they were dealing drugs. Skaggs also knew Joshua Strayer through drug dealing and Yonikas through the drug dealing and his friendship with Skaggs' older children. Skaggs had sold appellant cocaine and marijuana 15 to 20 times between February and May 2002. Skaggs recalled that twice the drugs were for Stiger. He would sell appellant between a gram and an ounce. Sometimes, appellant came to the house with other people. Appellant told Skaggs that he bought drugs from him because the buyers said his drugs were better quality because they were not cut or broken.
 {¶ 24} Strayer testified that he met appellant through another person from whom he had purchased marijuana. He recalled going to appellant's home to purchase drugs almost every day from February to May 2002. During that time, he saw about ten people a day come to the house to purchase drugs. He met Skaggs and Stiger through their drug purchases.
 {¶ 25} In his first and second assignments of error, appellant argues that the state failed to prove that the offenses charged in Count 1 and Count 2 were properly venued in Wood County. The trial court found that the two controlled buys were part of a single course of conduct and that appellant intended to conclude the second sale at the gas station in Wood County. Therefore, the court found that the venue for both offenses was in Wood County.
 {¶ 26} Defendants have a right to be tried in the county in which the charged offense is alleged to have been committed. Section 10, Article I, Ohio Constitution and R.C. 2901.12. R.C.2901.12(H) further provides that if a defendant is alleged to have committed offenses in different jurisdictions as part of a course of criminal conduct, he may be tried in any of the jurisdictions in which one of the offenses or any element of an offense occurs. Unless waived, venue is a fact that must be proven in every criminal case even though it is not an element of the offense. State v. Draggo (1981), 65 Ohio St.2d 88, 90. The determination of whether venue is proper in a given county is to be determined from the elements of the offenses. Venue is proper if any element of the offense was committed in the county where the defendant was tried. R.C. 2901.12(G) and (H) and State v.Headley (1983), 6 Ohio St.3d 475, paragraph one of the syllabus.
 {¶ 27} Appellant first argues that there is no substantial nexus between the two buys. Appellee contends that these sales were part of a course of criminal conduct. Pursuant to R.C.2901.12(H):
 {¶ 28} "any of the following is prima-facie evidence of a course of criminal conduct:
 {¶ 29} "(1) The offenses involved the same victim, or victims of the same type or from the same group.
 {¶ 30} "(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.
 {¶ 31} "(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
 {¶ 32} "(4) The offenses were committed in furtherance of the same conspiracy.
 {¶ 33} "(5) The offenses involved the same or a similar modus operandi.
 {¶ 34} "(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination."
 {¶ 35} This court has already concluded that evidence that a defendant is in the business of selling drugs is prima facie evidence that the sales are part of a course of criminal conduct.State v. Hackworth (1992), 80 Ohio App.3d 362, 367. See also,State v. Schnoering (Nov. 15, 1995), 9th Dist. App. No. 95CA006044 at 6-7. We find that there was sufficient evidence in this case to connect the offenses together as a single course of criminal conduct. Appellant sold cocaine to the informant on both occasions from his home consistent with his drug trafficking operation.
 {¶ 36} Second, appellant argues that even the second buy has highly tenuous connections to Wood County. Therefore, he contends that this case is "virtually indistinguishable" from State v.Headley, supra, and State v. Bovee, 6th Dist. App. No. H-02-032, 2003-Ohio-2788. In Headley, supra, the Ohio Supreme Court held that the case was improperly venued in the county where the defendant was arrested because all of the elements of the crime of aggravated trafficking occurred in another county. Likewise, we overturned a conviction in State v. Bovee, supra at ¶ 28 because the evidence presented was that the defendant aided and abetted the drug trafficking offense only at her home, which was in another county.
 {¶ 37} We disagree with appellant that this case is similar to Headley, supra, and Bovee, supra. With respect to the March drug deal, appellant told the informant to wait at the gas station while appellant picked up the drugs. When appellant arrived at the gas station, he told the informant to follow him back to his house because he had seen a strange car and did not want to "do anything" at the gas station. While the original offer to sell drugs at the gas station occurred at appellant's home in Sandusky County, appellant continued the offer to sell while at the gas station in Wood County by changing the place of delivery. Even though appellant did not expressly state that he wanted to return to his house to complete the sale of the drugs, the totality of the circumstances clearly indicated to the informant that there had been a change of plans and that the exchange would occur at appellant's house. This holding is supported by our decisions in State v. Carrillo (Mar. 24, 2000), 6th Dist. App. No. WD-99-023, at 5, where we held that an offer to sell need not be made in any prescribed form but may be taken from the totality of the circumstances.
 {¶ 38} Therefore, we find both appellant's first and second assignments of error not well-taken.
 {¶ 39} In his third assignment of error, appellant argues that the evidence was insufficient to prove that appellant sold more than ten grams of cocaine on March 7, 2002 as charged in the Count 2 of the indictment. Appellant argues that the prosecution cannot combine the two sales of less than ten grams each on March 7, 2002 as one sale. The trial court rejected this argument finding that the two sales were part of a continuing course of criminal conduct.
 {¶ 40} The standard for determining whether there is sufficient evidence to support a conviction is whether the evidence admitted at trial, "if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St. 3d 259, paragraph two of the syllabus; and State v. Thompkins
(1997), 78 Ohio St.3d 380, 386, reconsideration denied (1997),79 Ohio St.3d 1451. Therefore, the verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact.
 {¶ 41} Appellant concedes that public policy would justify procedures to prevent criminals from avoiding convictions for larger sales with higher penalties by dividing their sales. However, he argues that our justice system is based on the indictment and jury system and a rule of lenity codified at R.C.2901.04(A). Therefore, he contends that the prosecution must charge the defendant and then prove the charges. In this case, we find that the prosecution did so.
 {¶ 42} R.C. 2925.01(A) and 3719.01(AA) define a sale as including "delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee."
 {¶ 43} Therefore, Ohio courts have permitted the prosecution to aggregate separate deliveries of drugs in order to charge the defendant with a higher offense on the basis that the separate deliveries were part of a single agreement. State v. Miller
(Sept. 2, 1993), 2d Dist. App. No. 13755, at 4-5 and State v.Kissel (July 19, 1989), 9th Dist. App. No. 2461, at 3. The Eight District Court of Appeals has even held that the prosecution could aggregate the sales of 75 unit doses of cocaine over 15 weeks in State v. Robinson (Mar. 3, 1994), 8th Dist. App. No. 64734, at 8-9.
 {¶ 44} In the case before us, appellant agreed to immediately sell the informant a quarter ounce of cocaine and to get another quarter ounce of cocaine within a short period of time. Therefore, we find that this was evidence of a two-part delivery of a sale of one-half of an ounce of cocaine. Appellant completed the sale in two parts solely because he did not have enough of the drug on hand to complete the entire transaction at one time. We find that there was sufficient evidence to support appellant's conviction on Count 2 of the indictment. Appellant's third assignment of error is not well-taken.
 {¶ 45} In his fourth assignment of error, appellant argues that the prosecution did not give appellant proper notice in Count 4 of the indictment of the predicate acts of corrupt activity it would rely upon to prove that appellant engaged in a pattern of corrupt activity.
 {¶ 46} The prosecution contends that it notified appellant of the predicate acts in the Bill of Particulars and in the Amended Bill of Particulars.
 {¶ 47} Unless waived, a defendant charged with a felony must be prosecuted by indictment. Crim.R. 7(A). Due process requires that every defendant be notified of the nature and cause of the accusation against him. Article 1, Section 10, Ohio Constitution and Fourteenth Amendment to the United States Constitution. Another purpose of the indictment is to protect against future prosecution for the same conduct. State v. Siferd,151 Ohio App.3d 103, 2002-Ohio-6801 at ¶ 19 and State v. Burkitt (1993),89 Ohio App.3d 214, 224. The indictment can generally be amended at any time before, during, or after a trial, but before the verdict is rendered. Crim.R. 7(D); State v. O'Brien (1987),30 Ohio St.3d 122, paragraph two of the syllabus, and State v.Childs (Sept. 11, 1998), 2d Dist. App. No. 16325, at 16. However, an indictment cannot be amended to cure a failure to state the essential elements of the crime. State v. Cimpritz
(1953), 158 Ohio St. 490, paragraph three of the syllabus. Such an indictment does not charge an offense and it is voidable for lack of subject matter jurisdiction. Id. at paragraph six of the syllabus as modified by Midling v. Perrini (1968),14 Ohio St.2d 106, syllabus. This type of defective indictment also cannot be saved by a bill of particulars "* * * since a defendant cannot be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.'" State v. Childs, supra at 14 citing Russell v.United States (1962), 369 U.S. 749, 770.
 {¶ 48} With respect to charges that the defendant engaged in a corrupt activity in violation of R.C. 2923.32(A)(1), the indictment must set forth the requisite predicate offenses which underlie the charges. State v. Siferd, 151 Ohio App.3d 103,2002-Ohio-6801 at ¶ 2; State v. Adkins (2000),136 Ohio App.3d 765, 777-778; and State v. Burkitt, supra at 224-225. The predicate offenses may be contained in the other counts of the indictment. State v. Grimm (1997), 2d Dist. App. No. 96-CA-37 and 96-CA-38 at 9.
 {¶ 49} We agree with appellant that he did not have notice of all of the predicate acts that were actually proven at trial. However, he did have notice of at least two predicate acts because they were separately charged in the indictment as Count 1 and Count 2. Therefore, appellant had notice of two predicate acts that would support the corrupt activity charge. Appellant's fourth assignment of error was not well-taken.
 {¶ 50} In his fifth assignment of error, appellant argues that the trial court violated his constitutional right to trial and due process when it imposed a greater sentence after appellant withdrew his guilty plea and elected to be tried. After the bench trial, the court imposed a sentence for Count 1 of an 11 month prison term. Previously, the court had sentenced appellant to three years of community control on Count 1.
 {¶ 51} Appellant suggests that the increased sentence violates his due process rights and right to trial citing NorthCarolina v. Pearce (1969), 395 U.S. 711, 726 (a presumption of vindictiveness exists where a harsher sentence is imposed after a new trial). However, in Alabama v. Smith (1989), 490 U.S. 794,801, the court overruled Pearce, supra, in part. The court held that in the context of a lenient guilty plea sentence followed by a harsher sentence after trial, there is no presumption of vindictiveness. Id. at 803. See, also, State v. Mitchell
(1997), 117 Ohio App.3d 703, 706, citing Pearce, supra at 800).
 {¶ 52} Therefore, we agree that no presumption existed in this case and appellant had the burden of proving actual vindictiveness. However, appellant offered no evidence of vindictiveness beyond the fact that the sentences are different. Appellant's fifth assignment of error is found not well-taken.
 {¶ 53} Appellant argues in his reply brief that, in addition to the arguments presented in his brief, the court could not impose a prison term because the facts supporting the increased sentence were not alleged in the indictment and found by the trier of fact. Appellant relies upon the recent decision of the United States Supreme Court in Blakely v. Washington (2004), ___ U.S. ___, 124 S.Ct. 2531, 72 U.S.L.W. 4546, in which the court overturned a defendant's sentence because Washington statutory law permitted an enhanced sentence beyond the standard range if the judge made certain factual findings. The United States Supreme Court held that increasing the penalty for a crime based upon a fact which was not determined by the jury violates the Sixth Amendment right to trial by jury.
 {¶ 54} We find, however, that this issue was not related to his fifth assignment of error. The fifth assignment of error was very narrow and presented only the issue of whether the trial court had erred in giving a harsher sentence after appellant withdrew his guilty plea and went to trial. Had appellant wished to include an additional assignment of error alleging the unconstitutionality of the court imposing a prison term for a fifth degree felony based on facts determined by the judge and not the jury, he should have moved to amend his brief. Therefore, we will not consider this issue on appeal.
 {¶ 55} Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Wood County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Pietrykowski, J., Concur.