[Cite as *State v. Frost*, 2025-Ohio-1081.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-24 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 0276 |
| | : | |
| RAHEEM Q. FROST | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 28, 2025

. . . . . . . . . . .

JAY A. ADAMS, Attorney for Appellant

MEGAN A. HAMMOND, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant Appellant Raheem Q. Frost appeals from his conviction for aggravated trafficking in drugs following his no contest plea in the Greene County Common Pleas Court. On appeal, Frost argues that the trial court erred in overruling his motion to suppress evidence obtained from a search warrant and statements made to law enforcement officers. He further argues that the trial court erred in denying his

pretrial motion to dismiss based on lack of proper venue.   For the following reasons, the judgment of the trial court will be affirmed.

## I.   Procedural History and Facts

{¶ 2} On August 12, 2022, Frost was indicted by a Greene County grand jury on one count of trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(1), a felony of the first degree; one count of possession of a fentanyl-related compound, in violation of R.C. 2925.11(A), a felony of the first degree; one count of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2), a felony of the first degree; two counts of aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1), felonies of the second degree; three counts of aggravated possession of drugs, in violation of R.C. 2925.11(A), felonies of the second degree; one count of trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(1), a felony of the second degree; one count of possession of a fentanyl-related compound, in violation of R.C. 2925.11(A), a felony of the second degree; one count of trafficking in a fentanyl-related compound, in violation of R.C. 2925.03(A)(1); a felony of the third degree; and one count of possession of a fentanyl-related compound, in violation of R.C. 2925.11(A), a felony of the third degree. Each of the offenses listed in the indictment was alleged to have occurred "in Greene County, Ohio, or by some manner enumerated in Section 2901.12 of the Ohio Revised Code whereby proper venue is placed in Greene County, Ohio."   The indictment included seven separate forfeiture specifications.   The charges arose as a result of two undercover drug buys via a confidential source and subsequent search warrants for Frost's home on Stuben Drive and his vehicle.

{¶ 3} On March 13, 2023, Frost filed a motion to suppress challenging the constitutionality of the search warrant executed on the Stuben Drive residence and his vehicle. The motion further sought to suppress any statements Frost had made to the police, claiming that his statements were made in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

{¶ 4} On October 31, 2023, Frost filed a motion to dismiss or, alternatively, to transfer the case to the Montgomery County Common Pleas Court. According to Frost, the offenses for which Frost was charged had all occurred in Montgomery County, Ohio, not Greene County. Thus, the proper venue was not in Greene County.

{¶ 5} A hearing on Frost's motions was held on November 1, 2023. At that time, the parties narrowed the motion to suppress to two issues: 1) whether the search warrant for the Stuben Drive residence had been supported by sufficient probable cause, and 2) whether Frost had been properly *Mirandized* prior to making any statements. The State submitted a copy of the search warrant, affidavit, and inventory list for the Stuben Drive residence and a video of Frost being advised of his *Miranda* warnings. The parties agreed that the trial court would analyze the search warrant on a four-corners review.

{¶ 6} With regard to the motion to dismiss, the parties stipulated that at all relevant times, Frost was located in Montgomery County, Ohio. However, the undercover drug buys were initiated with the confidential source who was sited in Greene County, Ohio, along with the ACE Task Force members. The recorded phone calls discussing the purported drug sales were initiated in Greene County, while the physical exchange of money for the drugs occurred in Montgomery County.

{¶ 7} On December 15, 2023, the trial court denied Frost's motion to dismiss or transfer venue and denied Frost's motion to suppress in its entirety.

{¶ 8} On March 28, 2024, Frost entered a negotiated no contest plea. In exchange for Frost's plea of no contest to one count of aggravated trafficking in drugs, a felony of the first degree, and all the forfeiture specifications, the State agreed to dismiss all remaining counts. The parties jointly recommended an indeterminate prison sentence of a minimum of three years to a maximum of four and one-half years. Following Frost's no contest plea, the trial court found Frost guilty, ordered a presentence investigation report, and scheduled a sentencing date.

{¶ 9} On April 4, 2024, the trial court imposed the jointly-recommended sentence. Frost requested a stay pending appeal, which the trial court granted. Frost timely appealed and now raises two assignments of error for our review.

## II. Motion to Suppress

{¶ 10} In his first assignment of error, Frost challenges the trial court's ruling on his motion to suppress. Frost contends that the affidavit for the search warrant of the Stuben Drive residence was not based on sufficient probable cause. Further, Frost argues that his statements to police were obtained in violation of *Miranda*. We will address each issue separately.

### a. Search Warrant

{¶ 11} "The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide that search warrants may only be issued upon probable cause, supported by oath or affirmation, particularly describing the place to be

searched, and the person and/or things to be seized." *State v. Perez*, 2015-Ohio-1753, ¶ 9 (2d Dist.). "In this context, 'probable cause' means that the evidence presented in support of issuing the search warrant is sufficient for the magistrate to conclude that there is a fair probability that evidence of a crime will be found in a particular place." *State v. Long*, 2020-Ohio-4090, ¶ 20 (6th Dist.), citing *State v. Castagnola*, 2015-Ohio-1565, ¶ 35.

{¶ 12} Under Crim.R. 41, a request for a search warrant requires a sworn affidavit "establishing the grounds for issuing the warrant." Crim.R. 41(C)(1). "If the judge is satisfied that probable cause exists, the judge shall issue a warrant identifying the property to be seized and naming or describing the person or place to be searched . . . ." Crim.R. 41(C)(2). "The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." *Id.*

{¶ 13} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). When determining whether a search warrant has been issued upon probable cause, reviewing courts must examine the totality of the circumstances. *State v. Jones*, 2015-

Ohio-483, ¶ 15.

{¶ 14} A search warrant and its supporting affidavits enjoy a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978). When reviewing the sufficiency of probable cause for the issuance of a search warrant, an appellate court should not substitute its judgment for that of the magistrate by conducting a de novo determination of sufficiency. *George*, at paragraph two of the syllabus. "Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed"; it "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id*.

{¶ 15} There is no indication in the record that any oral testimony was presented to the judge who issued the search warrant, and the parties agreed at the motion to suppress hearing that the search warrant should be reviewed under a four-corners analysis. *Castagnola*, 2015-Ohio-1565, at ¶ 106 ("[W]hen no oral testimony is presented to the neutral and detached magistrate in conjunction with an affidavit for a search warrant, the probable-cause determination is based on the four corners of the document."). Based on a four-corners review, the trial court found that the search warrant affidavit contained sufficient probable cause to issue a warrant.

{¶ 16} On appeal, Frost challenges the validity of the search warrant on the basis that the affidavit did not show probable cause because it was based on hearsay of a confidential source ("CS"). Specifically, Frost argues that the affidavit filed in support of the search warrant failed to validate the reliability of the CS. Frost's argument lacks

merit.

{¶ 17} The affiant of the search warrant, Detective Sean Williams, was an experienced narcotics officer employed by the Beavercreek Police Department and a member of the Greene County ACE Task Force. The CS was identified as "a credible and reliable [CS] working under the direct control of the Greene County ACE Task Force." Although Williams did not provide much information as to whether the CS had provided reliable information to law enforcement in the past, the information provided by the CS was found to be reliable and was corroborated by the investigation that followed, which was attested to in the affidavit.

{¶ 18} Williams averred that the CS had informed the Task Force that "Pollo" was trafficking in methamphetamine and fentanyl in Dayton. Williams stated that "Pollo" was later identified as Frost based on surveillance conducted by the Task Force. The CS provided the Task Force with an address on Lorimer Street from which Frost operated but believed that Frost actually lived at or near an address on Stuben Drive. The CS further advised the Task Force that Frost normally would meet him or her in a black Chevrolet Monte Carlo.

{¶ 19} Williams stated that on May 3, 2022, a Task Force officer conducted surveillance on Frost's Stuben Drive home and observed a black Monte Carlo matching the CS's description in the driveway. A photograph of that vehicle was included in the affidavit.

{¶ 20} Williams averred that on May 6, 2022, the CS arranged a controlled drug buy to purchase $1,000 of methamphetamine and fentanyl from Frost. Task Force

officers assisted in the operation, including conducting a recorded phone call and driving the CS to and from the meeting location. Prior to the drug exchange, a detective conducting surveillance at Frost's Stuben Drive home observed Frost leave the home, enter a white Toyota, and drive away. Frost then met up with the CS at the Lorimer Street location and sold CS two baggies of methamphetamine and two baggies of fentanyl in exchange for $1,000 in cash. Frost remained in his car during the transaction. Immediately after the drug transaction, Frost returned to the Stuben Drive home. The drugs were later verified to be 57.68 grams of methamphetamine and 13.45 grams of fentanyl.

{¶ 21} On May 10, 2022, Frost's white Toyota and black Monte Carlo were again observed in the driveway at the Stuben Drive home by detectives. A photograph was taken and included in the affidavit.

{¶ 22} Williams stated that on June 7, 2022, the CS arranged another controlled drug buy to purchase $1,000 of methamphetamine and fentanyl from Frost. Task Force officers assisted in the operation, including conducting a recorded phone call and driving the CS to and from the meeting location. A detective conducting surveillance at Frost's Stuben Drive home immediately prior to the drug transaction observed Frost leave the home through the front door and get into a red Ford Fusion. Frost then met up with the CS at the Lorimer Street location and sold CS two baggies of methamphetamine and two baggies of fentanyl in exchange for $1,000 in cash. Frost again remained in his vehicle during the transaction and drove away immediately thereafter. The suspected fentanyl in both transactions had the same "purple texture."

{¶ 23} In addition to the information that was tied to the specific allegations in this case, the affidavit contained a lengthy recitation of general patterns and methods of drug trafficking observed by law enforcement officers in drug trafficking cases, including that it was common for drug traffickers and drug distributors to conceal drugs, contraband, and proceeds of their drug sales within their residences.   The search warrant was approved on June 9, 2022.

{¶ 24} In our view, the affidavit clearly established probable cause to believe that Frost was involved in drug trafficking operations.   Although it is a close call, we also conclude the affidavit provided a substantial basis for finding a fair probability that evidence of drug trafficking and/or drug possession would be found inside Frost's Stuben Drive home.   On this issue, the affidavit did not present much of a connection between the documented drug trafficking activity and Stuben Drive.   For example, none of the transactions occurred there, no drugs were reported being seen there, and there was no other drug related activity associated with the home.   In *State v. McClain*, 2015-Ohio-3690 (2d Dist.), we found that such facts weighed against a finding that there was sufficient probable cause to issue a search warrant for defendant's home.   However, unlike in *McClain*, immediately *prior* to both of the drug transactions, Frost was inside the Stuben Drive residence and left to conduct the drug transactions.   On each occasion, he drove a different vehicle, reflecting that the drugs were more likely coming from inside the home than from the vehicles.   Moreover, immediately after the May 6, 2022 transaction, Frost returned to the home in possession of the proceeds of the drug sale.   As a reviewing court, our standard of review is limited, "simply to ensure that the magistrate

had a substantial basis for concluding that probable cause existed." *George*, 45 Ohio St.3d 325, at paragraph two of the syllabus. Furthermore, we recognize that both the United States Supreme Court and Ohio Supreme Court have stated that reviewing courts are to accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant, regardless of what the reviewing court's independent determination regarding probable cause might be. *Gates*, 462 U.S. at 238-239; *State v. Schubert*, 2022-Ohio-4604, ¶ 11. Accordingly, the trial court did not err in denying Frost's motion to suppress based on the search warrant.

### b. *Miranda* Warnings

{¶ 25} On appeal, Frost repeats many of his arguments from his motion to suppress. However, at the hearing on the motion to suppress, the parties agreed to limit the trial court's review of the *Miranda* issue to whether the warnings were properly given. The arguments contained in Frost's motion but which he abandoned at the suppression hearing are deemed waived. *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 19. We therefore will limit our review to the single issue raised and addressed by the trial court. Having reviewed the video of Frost being advised of his *Miranda* warnings, we cannot conclude that the trial court erred in denying Frost's motion to suppress.

{¶ 26} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "In ruling on a motion to suppress, the trial court 'assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.' " *State v. Prater*,

2012-Ohio-5105, ¶ 7 (2d Dist.), quoting *State v. Retherford*, 93 Ohio App.3d 586, 592 (2d Dist. 1994). "As a result, when we review suppression decisions, 'we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *Id.* at ¶ 7, quoting *Retherford* at 592.

{¶ 27} In *Miranda*, 384 U.S. 436, the United States Supreme Court outlined procedural safeguards needed for securing the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. Accordingly, *Miranda* set forth that, during a custodial interrogation, a suspect must be advised of the following four warnings: "(1) that the suspect has the right to remain silent, (2) that anything he says can be used against him in a court of law, (3) that he has the right to the presence of an attorney, and (4) that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." *State v. Treesh*, 90 Ohio St.3d 460, 470 (2001), citing *Dickerson v. United States*, 530 U.S. 428, 435 (2000), citing *Miranda* at 479. "[A] suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police." *Berghuis v. Thompkins*, 560 U.S. 370, 388-89 (2010).

{¶ 28} In this case, Frost argues that the police officer failed to properly advise him of his *Miranda* rights prior to questioning. The video recording reflects that the warnings given to him clearly apprised Frost of the following: his right to remain silent; that anything

he said could be used against him in a court of law; his right to speak to counsel before and during questioning; if he could not afford to hire counsel, one would be appointed for him; and he could exercise his rights at any time if he wished to cease questioning. The police officer verified that Frost understood his rights after advising him of them, and Frost verbally responded that he understood his rights. Under these circumstances, we cannot conclude that the trial court erred in overruling Frost's motion to suppress based on a *Miranda* violation.

{¶ 29} Frost's first assignment of error is overruled.

### III. Motion to Dismiss

{¶ 30} In his second assignment of error, Frost argues that the trial court erred in denying his motion to dismiss the indictment or, in the alternative, to transfer jurisdiction of the case to Montgomery County Common Pleas Court. Frost makes no argument that the trial court erred in failing to transfer jurisdiction and presents no analysis regarding a jurisdictional transfer. Accordingly, we will not consider that issue on appeal. Rather, Frost argues that the trial court should have dismissed the case because all the elements of the offense occurred in Montgomery County and there was not a significant nexus to tie him to any activities in Greene County. Specifically, Frost contends that "there are intent levels, jurisdictional and venue considerations and knowledge that should have been considered by the trial court in ruling on this issue." Appellant's Brief, p. 21. We disagree.

{¶ 31} Article I, Section 10, of the Ohio Constitution provides that a person accused of a crime shall be tried "by an impartial jury of the county in which the offense is alleged

to have been committed." The trial of a criminal case shall be held in a court having jurisdiction of the subject matter and, except in certain circumstances that do not apply here, in the territory of which the offense or any element of the offense was committed. R.C. 2901.12(A). "When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred." R.C. 2901.12(H). Accordingly, venue may be proper in more than one jurisdiction. "Offenses 'committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective' serve as 'prima facie evidence of a course of criminal conduct.' " *State v. Pearce*, 2017-Ohio-8386, ¶ 16 (5th Dist.), quoting R.C. 2901.12(H)(3). R.C. 2901.12(H) is one of the "statutory reflections of the modern mobility of criminals to perform unlawful deeds over vast geographical boundaries." *State v. Draggo*, 65 Ohio St.2d 88, 90 (1981). Consistent with this multi-county venue, a grand jury of one county has authority "to indict on offenses outside its county provided that such offenses are part of a course of criminal conduct involving the county where the grand jury resides." *State v. Ahmed*, 2005-Ohio-2999, ¶ 11 (8th Dist.).

{¶ 32} "Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant." *State v. Headley*, 6 Ohio St.3d 475, 477 (1983), citing *Draggo* at 90. "Because venue is neither a jurisdictional nor a material element of a criminal offense, the indictment is only required to contain an allegation that the offense was committed within the jurisdiction of the court." *State v. Armengau*, 2017-Ohio-4452, ¶ 107 (10th Dist.), citing *State v.*

*Andrews*, 148 Ohio App.3d 92, 95 (10th Dist. 2002). Moreover, "because venue is a fact that must be proven beyond a reasonable doubt by the State, a pretrial motion challenging venue is not appropriate. A defendant may only challenge venue prior to trial if it equates to an actual defect in the indictment, for example, if the indictment fails to allege venue." *State v. Reed*, 2008-Ohio-1880, ¶ 14 (9th Dist.). "If the indictment is not defective for failure to allege venue, 'a defendant may only raise the issue of improper venue at trial via a Crim.R. 29 motion for acquittal, and may later appeal that decision, like any jury determination of fact, based on either the sufficiency of the evidence or manifest weight.' " *State v. Young*, 2017-Ohio-1400, ¶ 13 (9th Dist.), quoting *State v. Simpson*, 2004-Ohio-602, ¶ 74 (9th Dist.). "Because a pretrial motion challenging venue is improper, we may review only whether there is an actual defect in the indictment." *State v. Carpenter*, 2019-Ohio-58, ¶ 92 (3d Dist.), citing *Young* at ¶ 13; *Simpson* at ¶ 73.

{¶ 33} "A motion to dismiss an indictment tests the legal sufficiency of the indictment, regardless of the quality or quantity of the evidence that may be introduced by either the state or the defendant." *State ex rel. Steffen v. Court of Appeals, First Appellate Dist.*, 2010-Ohio-2430, ¶ 34. Accordingly, in ruling on a motion to dismiss an indictment, the trial court may not examine the sufficiency of the State's evidence. *State v. Miller*, 1998 WL 833796, *3 (2d Dist. Dec. 4, 1998). "Crim.R. 12 permits a court to consider evidence beyond the face of an indictment when ruling on a pretrial motion to dismiss an indictment if the matter is capable of determination without trial of the general issue." *State v. Brady*, 2008-Ohio-4493, ¶ 3. However, '[w]hether there is sufficient evidence to convict on an indictment – that is, to persuade the finder of fact of all of the

essential elements of the offense beyond reasonable doubt – requires the trial of the indictment to determine; there is no pre-trial mechanism for this purpose." *State v. Netzley*, 2008-Ohio-3009, ¶ 7 (2d Dist.).

**{¶ 34}** We review de novo a trial court's decision on a motion to dismiss an indictment. *State v. Cassel*, 2016-Ohio-3479, ¶ 15 (2d Dist.), citing *State v. Gaines*, 2011-Ohio-1475, ¶ 14 (12th Dist.). "De novo review requires an 'independent review of the trial court's decision without any deference to the trial court's determination.' " *Jackson v. Internatl. Fiber*, 2006-Ohio-5799, ¶ 17 (2d Dist.), quoting *State ex rel. AFSCME v. Taft*, 2004-Ohio-493, ¶ 27 (3d Dist.).

**{¶ 35}** The indictment charged Frost with multiple counts of drug trafficking and possession of drugs based on two undercover drug buys and subsequent search warrants. The indictment alleged that all of the offenses were committed by Frost "in Greene County, Ohio, or by some manner enumerated in Section 2901.12 of the Ohio Revised Code whereby proper venue is placed in Greene County, Ohio." Notably, "evidence that a defendant is in the business of selling drugs is prima facie evidence that the sales are part of a course of criminal conduct." *State v. Warden*, 2004-Ohio-6306, ¶ 35 (6th Dist.), citing *State v. Hackworth*, 80 Ohio App.3d 362, 367 (6th Dist. 1992). Because the State alleged in the indictment that venue was proper in Greene County through the application of R.C. 2901.12, the indictment contained a sufficient allegation that the offense was committed within the jurisdiction of the court to defeat a motion to dismiss based upon improper venue.

**{¶ 36}** In support of his position, Frost cites the facts alleged in the affidavit in

support of the search warrant to complain of the lack of sufficient facts to establish venue. However, whether the State had sufficient evidence to establish venue beyond a reasonable doubt was a factual determination reserved for trial. Accordingly, the trial court did not err in overruling Frost's pretrial motion to dismiss.

{¶ 37} Frost's second assignment of error is overruled.

### IV. Conclusion

{¶ 38} Having overruled the assignments of error, we will affirm the judgment of the trial court.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.